FILED

IN THE US DISTRICT COURT FOR EASTERN VIRGINIA

2020 JAN 24 P 4 49

CLERK US DISTRICT COURT
ALEXANDRIA, VIRGINIA

| | |
|---|---|
| EMMANUEL OGEBE<br>1025 CONNECTICUT AVE NW<br>#1000<br>WASHINGTON DC 20036 | )<br>)<br>)<br>)<br>) |
| Plaintiff, | )   Civil Action No. <u>1:19 cv 00426</u><br>) |
| v. | )<br>) |
| DOW JONES & COMPANY,<br>1211 AVENUE OF THE AMERICAS,<br>NEW YORK, NY 10036 | )<br>)<br>)<br>) |
| DREW HINSHAW,<br>Uknown Address – United Kingdom | )<br>)<br>) |
| JOE PARKINSON,<br>Unknown Address – South Africa<br>And<br>GBENGA AKINGBULE,<br>Unknown Address – Nigeria<br>Defendants. | )<br>)<br>)<br>)<br>) |

## **AMENDED COMPLAINT**

Plaintiff Emmanuel Ogebe in support of his Complaint against Defendants

Wall Street Journal, Dow Jones Company, Drew Hinshaw, Joe Parkinson and

Gbenga Akingbule states the following:

### **I.PARTIES**

1.      Plaintiff Emmanuel Ogebe is an individual, a lifelong humanitarian

and a resident of Springfield in the Commonwealth of Virginia. His professional

office is in the District of Columbia. He is the primary target of Defendants' false

and defamatory article.

2.      Defendant Dow Jones & Company is a privately held Delaware limited liability company also registered as a foreign company in the District of Columbia under DC law in 1955 and has maintained a Registered Agent for the purpose of legal liability there till date. Dow Jones & Company has a subsidiary, which is The Wall Street Journal. Dow Jones & Company publishes The Wall Street Journal newspaper in conjunction with News Corp and operates a robust Washington Bureau and employs writers in DC who contributed to the defamatory article.

3.      Defendants Dow Jones & Company and The Wall Street Journal are collectively referred to herein as *"WSJ"* or *"Defendants." The WSJ* published the false and defamatory article about Mr. Ogebe on April 13, 2018 on its website worldwide and in its print edition of the newspaper.

4.     Defendant Drew Hinshaw is a journalist who is employed as a Senior Reporter for *WSJ*. Hinshaw is resident in the United Kingdom, by admission of the parties. Hinshaw authored and published the defamatory article that tarnished Mr. Ogebe's image.

5.     Defendant Joe Parkinson is the Africa Bureau Chief for *WSJ*, based in South Africa, by admission of the parties, and participated in the writing of the article.

6.     Defendant Gbenga Akingbule is a stringer for the WSJ based in Nigeria, by admission of the parties, and participated in writing the defamatory article. (Hereinafter, the use of the word "Defendants" or "WSJ" refers to all of the parties listed in 2-6 above )

## II. JURISDICTION AND VENUE

2

7.    This Court and the US District Court for the District of Columbia have specific jurisdiction under 28 US Code § 1332 and 1391(b) on the basis of diversity of citizenship and amount of controversy which exceeds the $75,000 threshold. Venue is most proper in the DC court as majority of defendants are not US based and first defendant is a registered foreign corporation in DC. Plaintiff has a place of business in DC as do the defendants.

8.    *The WSJ* defamation claim arises out of the Article that was published on Defendants' website accessible in DC, researched by its employees in DC while targeting Plaintiff's work in DC – the operative locus. Defendants' connections to DC are extensive – Defendants run a DC Bureau to cover stories in the nation's capital; regularly author and publish articles that are aimed at DC; and Defendants derive revenues from DC-based advertising and sales. Defendants derive substantial revenue from sale of newspapers and sale of advertising resulting from their directing their publications, including the article at issue in this action, into the DC Metro area. *The Wall Street Journal* may be purchased at any number of retail locations within the DC metro area, and has hundreds of thousands of subscribers of its print edition, and accordingly, has significant effect in DC.

### III. NATURE OF THE ACTION

3

9.      This defamation action arises out of the publication of the false and defamatory article in *Wall Street Journal* entitled, "The American Ordeal of the Boko Haram Schoolgirls" (hereinafter, "the defamatory article'). *WSJ's* writers Drew Hinshaw, Joe Parkinson and Gbenga Akingbule wrote the article which drew national and international attention and has been read and reproduced innumerable times.

10.     Defendants' purpose in publishing the article was to promote a narrative that depicted the Plaintiff as a callous, exploitative, celebrity-groupie who was not really assisting victims of terror, was falsely advocating for persecuted Christians, was rather advancing only his "political agenda"and held victims as "hostages."

11.     The article carried the blazing headline, "The American Ordeal of the Boko Haram Girls," which was itself sensation-seeking and obnoxious in its description of the schoolgirls as "the Boko Haram girls" in its ordinary meaning, interpretation and understanding, conveying they belong to or are owned by the terrorist group Boko Haram. Its synopsis stated that Plaintiff held fund raisers for the girls, which funds disappeared while he hobnobbed with the high and mighty. The article was craftily contrived to portray Plaintiff in the most injurious light as a villain and terrorist kidnapper who should have been prosecuted for intimidating and exploiting the girls.

## A. **Background**

12.     Plaintiff Ogebe has been involved in human rights work in Africa for a quarter century. Since 2010 Mr. Ogebe has been working pro bono to assist victims of

terror and persecution. In 2014, Jihadi Terrorist group Boko Haram abducted hundreds of schoolgirls in Northern Nigeria and during one of his fact-finding missions with members of Congress, they discovered that some of the escaped girls were neglected - without healthcare, education, security or support from the Nigerian government – despite a worldwide #bringbackourgirls twitter campaign.

13.  Plaintiff Ogebe consequently created a project to relocate some of the schoolgirls and other victims of terror and persecution to the US to enable them complete their high school education in safety. 12 girls arrived in US on two year study visas.

14.  Although five of the gifted and talented schoolgirls successfully completed high school, community college and university in 2017, 2018, 2019 and 2020 respectively, seven schoolgirls who remained at 8th grade levels at the end of their 2-year visas in 2016, dropped out to pursue GEDs at the instigation of the Nigerian embassy which neglected them in the first place. This case revolves around the under-performing students who dropped out in 2016 and their excuses for doing so in 2016. Defendants never acknowledged the schoolgirls who did not leave the Plaintiff for the embassy in 2016 and who all went on to achieve great successes every year since then.

15.  In 2018, Defendants WSJ promoted a carefully crafted hack attack on Plaintiff, hatched since 2014 and using documents as old as 2015 & 2016 to assassinate Plaintiff's character. Defendants relied on documents they knew to be false, which contained information that was highly improbable, and interviewed people who admitted they were liars and relied on parties who had been sued for defamation on the very same subject in reckless disregard for the truth.

16.  Plaintiff is a lifelong humanitarian lawyer who the embassy of Nigeria in Washington targeted as a dissident for his critique of the government's poor human rights record. It collaborated with an unscrupulous American opportunist, Doug Wead, to

sabotage & discredit Plaintiff at every turn. They found a willing pansy in Defendants to publish the false narratives they had pitched for several years (Exh H)

17. Defendants, while **fully aware** that **Plaintiff had sued the Nigerian government for defamation,** (See Appendix 4A-B) that the embassy's reports were glaringly inaccurate, highly improbable and one-sided, while quoting the girls whom Defendants admitted were liars, then published falsehoods and recklessly disregarded the truth.

Defendants fabricated evidence they claimed to have and created fictional accounts of places and actions that plaintiff was never at or did. Defendants sought to delimit Plaintiff Ogebe's constitutional freedom of speech by abusing their free speech.

## 1. Indicative Timeline of Events

2014 - Plaintiff brings 11 schoolgirls to two high schools in USA on 2-year student visas

2015 - Plaintiff brings a 12th school girl to school in USA

2016 - Plaintiff places three high-achieving schoolgirls in community college, four remain at high school, five are in middle school by the end of their 2-year student visas

2016 - Nigerian embassy takes away seven students from school – 2 high schoolers and 5 middle schoolers, accuse Plaintiff of exploitation and not putting them in school.

2017 - The two remaining non-government school girls in high school graduate with diplomas (one magna cum laude) and begin community college

2018 - 1st non-government college student graduates (magna cum laude) with associate degree in science from community college, begins full degree program

2018 - Wall Street Journal publishes defamatory article against plaintiff regarding the seven underperforming drop outs from 2016

2019 - Non-government college student above, graduates full university with bachelors degree in science; 2nd non-government community college student graduates with associate

degree in science, begins university

2020 - 3rd non-government college student, graduates from university with a bachelor's

degree in Criminology

KEY FACTS

18.     Firstly, Plaintiff has never been confronted by any lawful authority about
        any complaint of the girls. Rather Plaintiff has evidence of coercion that
        their US visas would be denied if they did not leave and denounce
        Plaintiff. In effect, that they would unable to stay in America if they did
        not make complaints against Plaintiff Ogebe

19.     Secondly, Plaintiff was **never interviewed by any Nigerian or**
        **American investigators on fraud** but voluntarily made himself
        available to authorities in Nigeria and the US and presented rebuttals of
        the embassy's bogus claims in late 2015 and early 2016 (See Ogebe
        Exhibits B1,B2,B3). Defendants claim that the US and Nigeria
        concluded financial impropriety "likely" is absurd as criminal liability
        must be, beyond reasonable doubt (not a balance of probabilities);
        before a duly constituted court proceeding  (not speculation by any
        agency) and certainly not in violation of the Plaintiff's constitutional
        rights to fair hearing or confrontation by his accuser. The **Nigerian**
        **embassy does not have jurisdiction to conduct criminal**
        **investigations in the United States** and **the FBI does not have**
        **jurisdiction or authority to pronounce guilt of individuals**[1] (This is a
        judicial function via due process.)

---

[1] In an editorial, WSJ excoriated FBI director that "he prematurely ended the investigation and proclaimed that "no reasonable prosecutor would bring such a case"—a decision for the Justice Department, not the FBI (A Fine FBI-Clinton Mess, Wall Street Journal, October 29, 2016).

7

20.     Defendants  never  informed  or  asked  Plaintiff  of  their  star  source  Kauna  Bitrus's
accusations, showed him the government reports or asked/allowed him to provide his
copious rebuttals, his attorneys' correspondences as well as his evidence in reckless
disregard for the truth. Defendants conly afforded Plaintiff the proverbial "one call" during
dinner on the eve of publicationto maximize their last minute "gotcha" gutter journalism..
Worse still, not only did they not  use the facts he presented, Defendant Parkinson even
hung up before the call was over!

21.     Finally, the evidence shows that Defendants WSJ published the article while entertaining
serious doubts as to the credibility of the girls and in fact acknowledging that they were
liars. During their recorded phone interview with Plaintiff, a transcript of which is attached
as Exhibit (Amen 1 and AV1), Plaintiff stated thus:

Emmanuel: Yeah, if anything I can tell you that whoever put those girls at the UN to say
what they said - **you can't tell me that that girl went to the UN and lied through her
teeth without being put up to it by her minder. Even in the UN she lied that it was
Congresswoman Fredericka Wilson who brought her to America. You know that's not
true. I know that's not true, Fredericka Wilson knows that's not true.** This was the
testimony at the UN Security Council; **I don't know how much longer they can keep up
all of this lying.**

Drew: Yeah, Okay! I was wondering the same thing. I was wondering the same thing. (Page
10 bottom highlight)

22.     Defendant Hinshaw admitted that he too wondered how long the students would keep on
lying. This speaks directly to the actual malice standard that he not only entertained doubts
but knew for a fact that they were lying. The video of the student lying at the UN is
Exhibit (AV2).

23.     COUNTS OF DEFAMATION

        **COUNT ONE DEFAMATION PER SE**

        **Challenged Statement**
        **Statement 1:** "The young women say he told them they could be shipped back there – and
        harmed – if they didn't do what he said."
        Compl. Ct. I, ¶ 3(a).
        **False.** Plaintiff never threatened to "send them back" and denies that multiple students
        made this claim.

**Facts.** On the contrary, he "advised the girls that their summer vacation trip home to renew their visas would be delayed till it was safe for them" due to threats from the state government that if they girls came to renew their visas, the Borno state government would prevent them from returning to the US because they were just "domestic servants to White people").

**Malice.** Published with actual malice as Defendants clearly knew that the girls who arrived in 2014 had 2-year student visas which expired in 2016 and were not US permanent residents, refugees or asylees.

Indeed, Defendants knew that some of the girls had visited Nigeria on summer break at Plaintiff's expense. All the girls had been asked their choice of activity for the summer. Some chose to go home and some didn't. (See Exhibit).

**Defamatory.** Defendants portray Plaintiff as an evil person who threatened to harm schoolgirls rather than the kind benefactor he was who rescued them from danger. Defendants projected Plaintiff's law-abiding compliance with US immigration law as a bad thing.

**Statement 2:** Ms. Bitrus and some of her classmates "found themselves hostage" by "a prominent Nigerian human rights lawyer, (referring to Plaintiff) to raise money and further political agendas in Washington"

**Defamatory:** defendants portray Plaintiff as a terrorist kidnapper. The Oxford Dictionary defines a "Terrorist" thus, "A person who uses unlawful violence and **intimidation**, especially **against civilians**, in the **pursuit of political aims**."

WSJ said exactly the same thing "Bitrus and some of her classmates (**civilians**) "found themselves **hostage**" (**intimidation**) by "a prominent Nigerian human rights lawyer, (referring to Plaintiff) to raise money and further political agendas (sic) in Washington (**pursuit of political aims.**)"

This characterization of Plaintiff was to reinforce their sensational and click-bait-seeking headline about a faux "American Ordeal."

**Fact:** Plaintiff in rescued them from a miserable life of poverty, terrorism, and backwardness - transforming their lives with opportunities far beyond their life expectation and natural capacity. Mr Ogebe also gave the girls all-expenses-paid summer vacations to visit their families at home in Nigeria annually which completely negates WSJ's false report that the girls were hostages.

**Malice:** The statement is false and defendants defamed Plaintiff per se in his professional actions in his seeking the freedom of the rest of the still abducted schoolgirls by painting him as a terrorist kidnapper instead of a benefactor.

**Statement 3:** "Mr. Ogebe generated a lot of money through these activities and never spent a dime to care for their well-being," and "[t]he girls . . . accused him of using them as money
minting machines."

**False.** Plaintiff did not generate a lot of money but did spend considerably to care for the girls.

**Fact.** Plaintiff paid for and provided transportation, visas, health insurance, hospital, medical, dental, psychological, chiropractic, ophthalmological, psychiatric care, vacations,

technological supplies, high school supplies for nine schoolgirls and college tuition, books and board for three college girls, and cash allowances for 12 over a 2-year period.

**Malice:** Defendants only attributed a $7000 donation to Plaintiff with which it is impossible to carry out all the above for one person for one year, let alone 12 people for two years. Not only was this highly improbable, Nigerian government's claim that he "never spent a dime" of that money on the students is so ludicrous that even a journalist of no or low intellect knows on the face of it to be false. Defendants knew that neither media nor congress pay for appearances and therefore these activities could not be income "generating."

**Defamatory:** Defendants portrayed Plaintiff as a scurrilous person who neglected students while amassing vast resources.

**Not protected by fair report privilege** because not only was it implausible, it was rebutted by FBI sources Defendants claimed said he had provided them housing. Thus, even when there was exculpatory evidence in favor of the Plaintiff which Defendants admit meant there was no basis to charge him, Defendants presented this evidence in the worst light possible

**Statement 4:** Defendants' report that he "spent some fraction of th[e] money [he raised] on housing and transporting" the students is **false, defamatory and malicious**. This is proof that the Defendants did not only have serious doubts but that they knew the embassy lied.
**Malice:** Defendants engaged in publication of actual falsehood here. A fraction is a portion of a whole figure. No figure or amount was adduced by the embassy report on the basis of which the Defendants could categorically determine it was "a fraction." Defendants graduated from the zero sum spent on thè girls claim by the embassy to a "fraction."

Indeed, the **fair report privilege** fails because their report was distinctly different from the embassy's. Although the Defendants found it replete with lies, they twisted the truth to try to justify the falsehoods.

Defendants fraudulently suppressed the fact that Plaintiff actually paid the embassy for the girls' passports which contradicts the embassy's false report. Defendants having discovered the falsehood and that the Plaintiff obviously had provided for the girls, then intentionally claimed it was a "fraction" of what he received which is a provably false connotation. A fraction of $7000, the only actual amount attributable to Plaintiff as the embassy report did not attribute any amount, could not take care of an individual for 2 months in Washington DC. Just two girls ran up over $4000 in phone bills and five almost $10,000 in phone bills alone. See Exhibit

**Statement 5** "audiences . . . put donations on the table to hear" the students

This is **false, defamatory and malicious.** No such event ever transpired and it is an utter fabrication.
Further, not even the bogus embassy report made such a claim. Defendants portray Plaintiff as someone who collected fees to hear the girls speak. Plaintiff NEVER collected fees or even honorarium for the girls or himself EVER!

**Statement 6** Defendants published an embassy claim that he raked in "tens of thousands" which is false defamatory and malicious.
**False:** These are actual numbers that could and should be verifiable. However, the methodology of the embassy report *does not* justify how it could conceivably have reached such a conclusion when it did not interview any "donors" and it did not make any donations.
**Facts:** Indeed, the *only evidence* of finances in the report was funds **collected and disbursed by** Jubilee Campaign. It is obnoxious that Ann Buwalda of Jubilee Campaign

who had literally **seen and held** over $50,000, raised by Plaintiff, and had paid it out to Wead and co, would make such a claim.

**Malice**: Defendants maliciously defamed Plaintiff on the basis of lies it now frames as "hyperbole," knowing it to be false, or believing it to be true, lacking reasonable grounds for such belief, and acting in reckless disregard to the facts.

**Statement 7:** "Over and over again, they say they have been asked by Mr. Ogebe and others

to recount an escape most wished to put behind them."

**False**. This is simply false. No one was asked over and over again to recount anything.

**Fact.** Jubilee Campaign and Doug Wead referred media and speaking requests to Plaintiff which he tried to manage except for Wead who threatened him to allow media or the girls would be kicked out of the school and have to be "homeschooled" in Ogebe's home. Subsequent requests were also made directly to Plaintiff most of which he turned down. The college student who did tell her story **was not among** those taken by the embassy and remarked that she did it to help free her missing classmates. Incidentally, her cousin ended up being freed in 2016.

Rather both schools invited media to their campuses to interview the girls and held events where the girls were made to tell their stories without the prior knowledge of Plaintiff Ogebe (See Exhibit) . This led to people finding the locations of the girls and randomly coming to campus in search of them.

Ironically, one of the girls now with Doug Wead told her story more times, in different cities around the US in 2017 alone, than in the two years that she was with the Plaintiff and for which she collects money.

**Malice** As allegedly the most successful US paper, Defendants would have covered the girls if they had such media exposure as claimed. This is a fact that would have been peculiarly within their knowledge if the girls were having a litany of public appearances. For two years, 2014-2016 when they were with Plaintiff, the girls were not on the defendants' radar but in 2018, fully two years *after*, they suddenly are. In other words, bizarrely when they girls were allegedly overexposed to the media, they were not featured by Defendants but two years later, when they were supposedly "rescued" from media exposure, they were! Worse still, defendants arbitrarily attribute the alleged requests of unnamed others to Plaintiff, in a persistent pattern of sleight of hand that pervades the defamatory article, as he cannot be liable for acts of unknown actors.

**Defamatory:** Defendants portray plaintiff as insensitive, uncaring and demanding.

**Statement 8:** "His calmly narrated accounts of Boko Haram murders of Christians – he rarely mentioned the sect's more numerous killings of Muslims – won him friendships with powerful contacts."

**Defamatory**: Defendants portray Plaintiff as a bigoted liar by contradicting his claim of Christian deaths which they allege was made to win "friendships with powerful contacts". Defendants' gratuitously name drop - Representatives Jason Chaffetz, Chris Smith, and Frederica Wilson. Any reader, would view a perceived lying religious bigot for the sake of socializing with the powerful as odious and it is thus defamatory. **Special Note - WSJ did not portray has an "influencer" (public figure) but as a "socializer."**

**Fact:** Plaintiff has engaged with congressmen since 1997 and did not need the girls' story or Christian persecution to that end. Apart from appearing before his committee in 2014, Plaintiff has never met Congressman Chaffetz before or after. Plaintiff's contact with

congress over the years is purely professionally and not socially. Plaintiff had a right to advocate for whom he wishes and it was malicious of Defendants to assert he neglected Muslim victims.

Secondly, Plaintiff provided actual data on over 8000 Christian deaths from the Church of the Brethren alone while others parroted unsubstantiated claims.

**Actual malice** This was actual malice as Defendants' knew his testimony did not gloss over Muslim deaths. In fact, more than anyone else, Plaintiff in his last testimony in congress raised concern on the ill-treatment of Shia muslims in Nigeria.

Worse still, Defendants attacked Plaintiff's constitutional free speech rights but are pleading constitutional speech rights. Further, Defendants' very effort to excoriate Plaintiff on what he *did not say* in his congressional testimony as well as what *he did say* illustrates firstly, their petty personal animus, and secondly, in stunning irony, a disdain and contempt for his constitutional free speech rights!  In the biased eyes of WSJ, Plaintiff was damned if he said and damned if he didn't say.

**Statement 9:** "Ogebe emphasized Boko Haram's "stated objective to eliminate Christians in northern Nigeria" and criticized a DHS official's "narrative" that "more Muslims than Christians were killed.""

**False:** Firstly the two are logically incompatible – if the terrorists said they were going to eliminate Christians in northern Nigeria, why would the number of Muslim deaths be higher than their Christian targets? Defendants therefore knowingly published something that on its face was absurd and highly improbable.

**Defamatory:** WSJ portrays him as lying, fudging Christian genocide and data falsification. This grievous allegation has so damaged Plaintiff's credibility that, even if he had any prior influence or was a public figure, he no more has or is. Plaintiff has been so diminished professionally and reputationally that his opinion is no more sought as before Defendants' defamation.

**Malice:** WSJ and Hinshaw obtained evidence from congress but suppressed it for the sake of their witch-hunt of Plaintiff. Defendants knowingly and willfully suppressed evidence submitted in the public record of the murder of 8000 Christian martyrs from one church, the greatest in contemporary Christendom, in their bid to maliciously propagate the notion that Plaintiff, as a human rights lawyer, was lying about Christian persecution in Nigeria.  That, again, is defamation per se by the defendants.

Defendants have ironically published a report barely 19 months later saying the war on Nigeria's Christians is being ignored in total vindication of Plaintiff's point.

Yet they pilloried and shredded Plaintiff for speaking out about this four years ago, destroyed his ability to speak further about this and then, thousands of lives lost later, bemoan the world's ignoring the war against Christians in Nigeria. Tragically, WSJ was a chief offender by wasting time, effort and money sending five irresponsible journalists on three continents on a unicorn hunt to destroy Plaintiff's reputation while ignoring, indeed belittling, the simmering genocide of innocent lives!

**Statement 10**: "Mr. Ogebe was in Nigeria and in a hurry, said two people who met him at the entrance to the school, and was making demands of the school's administrators. He was accompanied by parents and pieces of paper demanding the school give him four Chibok

/ 2

survivors for weekend meetings in Abuja, the capital. The school reluctantly agreed. The girls were never returned, the people said."

**Defamatory** implies Plaintiff personally abducted the schoolgirls under false pretenses from a school in northern Nigeria. There could be no clearer defamation than those words in the eyes of any reader. This contains a false assertion of fact that tends to harm the reputation of the Plaintiff as to lower him in the estimation of the community.

**False:** This is an entirely fictional episode placing him in a school he had never been to and doing things he never did creates the impression that Plaintiff abducted the girls from a school in Nigeria.

**Facts:** Plaintiff only met Chibok schoolgirls in Nigeria during two US Congressional delegations in June which were limited to the capital city of Abuja and NEVER the northeast city of Yola where the school is. Both back-to back congressional delegations in June 2014 and the President of Nigeria then are Plaintiff's alibi. Plaintiff returned with the first delegation, testified in congress and then departed to Nigeria with the second delegation and then returned to the US.

**actual malice** as Defendants published this and, with reckless disregard for the facts, suppressed Plaintiff's rebuttal that he was never there and that domestic operations' responsibility fell on local actors. Defendants knew this story was false because the Nigerian government's report actually identified local actors it said were responsible for recruitment of the girls. Defendants' story did not comport with the embassy's report which didn't place plaintiff in the recruitment process. Defendants therefore published what they knew to be false – either the embassy report lied when it said that the Gadzamas recruited the students or the AUN school administrators were lying when they said Plaintiff came there to pick them up!

In actual malice, Defendants' recklessly disregard the truth by publishing statements of unnamed administrators who claimed to have seen him when Plaintiff had never been at the school and having never met him, wouldn't know how to recognize him. It is bizarre and irresponsible that the school would hand over girls to people without identifying them. If, however, as they claim, the girls' parents were there, then it is nonsensical for the school or defendants to imply foul play.

**Statement 11:** "Mr. Ogebe insisted he be the custodian of that money – a request the JUBILEE CAMPAIGN felt breached financial reporting rules for nonprofit organizations."

**False:** This never happened and is an utter fabrication

**Fact:** Jubilee was terminated for misuse of the girls' funds, including paying for $5000 for Doug and Myriam Wead's flights, for refusing to pay for the girls' flights and for covering up the girls' abuse by one of their host families.

**not fair report privilege**

**actual malice** Defendants falsely attribute this to "government report" but didn't specify that it was attributed to Ann Buwalda of Jubilee Campaign. The statement is not "a direct quote" of the report, which false as it was, still created a dialogue. "Mr. Emmanuel Ogebe . . . preferr[ed] that all monies raised in the name of the girls be warehoused with him as their guardian. Jubilee Campaign rejected Mr. Ogebe's proposal"

Rather Defendants wrote their own quote and published it as a fact and not a third-hand version of an alleged debate. An objective reader would have been leery of this claim if it was a hearsay attributed to Ann Buwalda of Jubilee Campaign by the embassy.

Worse still, even the embassy report showed that Jubilee had possession off and depleted the funds leaving responsibility on Plaintiff to care for the girls.

13

**Statement 12:** "Mr. Ogebe, who didn't work for Jubilee, was also raising funds for himself, Jubilee complained, according to the Nigerian government report."
Ann Buwalda allegedly complained that the students were "dragged around for the fundraising desires of [Ogebe] and associates," and that "[t]hey will never see a dime of the fundraising by [Ogebe] and team."

**not fair report privilege, materially false, published with actual malice**
**False:** This is outright dissimulation. Buwalda did not complain that Plaintiff was raising money for himself or had raised money for himself. In an e-mail rant, she said they girls would never see the money (future tense not present tense.)

Plaintiff had no fundraising with the girls when the May 25th email was purportedly written.

**Facts:** Rather, their first Sunday in the US, Ann Buwalda took the girls to her church Sovereign Grace, Burke and not plaintiff's. The girls did not receive whatever Ann Buwalda raised for them until months later when he found out it hadn't been given to the girls.

Plaintiff had funded Ann Buwalda's two trips to Nigeria. Plaintiff's family and friends in the US, Africa and Australia contributed financially to Jubilee Campaign. There was no debate about hosting of funds as the express agreement was for Jubilee to host the funds but when they refused to pay for the girls' needs, they were dropped. (See Exhibit)

**Malice:** Defendants showed actual malice by publishing a statement they knew to be false and did in fact fabricate. Defendants knew it to be false since Jubilee indicated its breakdown of the funds it held in the report. Furthermore, Defendants recklessly disregarded the obvious fraud that schools' that allegedly gave "scholarships" depleted the girls' upkeep funds.

**Statement 13:** Defendants' published a claim by Doug Wead that "Mr. Ogebe and his wife, Morinke . . . kept monies raised". Defendants publish this as fact when there is no basis.

**Malice:** Defendants apishly regurgitate as fact, things that from the face of them have no probative value.If Doug Wead had stated that Plaintiff was a unicorn who went vacationing in Mars, Defendants would have published that the Government of Nigeria concluded that Plaintiff was a unicorn who vacations in Mars and Saturn.

Defendants took alleged interview notes and repeated them as facts. There was a total lack of critical analysis by Defendants. The report itself did little more than collate a one-sided narrative to justify its predetermined agendum which was to discredit a regime critic. The embassy report didn't state that Plaintiff was ever interviewed on any accusations of financial impropriety.

**False:** Plaintiff does not have a wife named Morinke and the allegation is baseless. The only person who mentioned her name was Doug Wead in his unhinged accusations. Yet the Nigerian embassy misspelled a Nigerian name. This misspelling by the only embassy in America with expertise on Nigerian names is possible solely because the embassy actually copied and pasted Wead's vindictive dossier as their report.
**No Privilege:** The so-called government privilege wears borrowed robes. It was the voice of Jacob but the hands of Esau or more appropriately, Wead! It is underserving of privilege.
**Fact:** Ironically, Doug and his wife Myriam Wead are the only ones identified in the report as having claimed over $5000 for flying first class to the school where he works with the

14

funds for the Chibok girls.

24.    COUNT TWO: DEFAMATION

**Statement 14:** WSJ said Plaintiff took the girls to "a conference room full of journalists" in Manhattan and "afterwards, Mr. Ogebe appeared overjoyed, Ms. Bitrus recalls. 'He was like, "Girls! I'm so proud of you! You can speak English! I'm really proud of you." 'Later that night he asked her to retell her story to his wife."

**Facts:** After the media event organized by Wead in Senator Rand Paul's conference room for all the girls, Plaintiff, two girls and a Nigerian official went to New York. They had lunch at their hotel with other Nigerian officials and citizens before returning to DC.

**defamatory by implication materially false actual malice** – reckless disregard for the truth by not asking. Having failed to adduce any instance where their star witness Kauna was asked to tell her story in public - ever, Defendants concocted a dinner time exchange. Their prejudice is highlighted by the fact that Wead's documented media event in DC the previous day with seven girls and an American politician was not condemnable but Plaintiff's lunch meeting with two girls and Nigerian officials the next day was! Basically, if it's White, its Right but if its Black, its Bad.
Defendants' published this with actual malice because they themselves were not there being Manhattan-based journalists and there are no journalists reports anywhere from the said "roomful of journalists."

**Statement 15:** "On Sundays, Mr. Ogebe would often bring one set of Chibok students or another to a church, where donations poured in for their education, the young Nigerians say."

**False:** Plaintiff denies that "donations poured in for [the students'] education," or that he often took them to churches either. This is simply false.
**Fact:** Plaintiff avers that apart from the solitary Easter weekend, there was no pattern of his taking any sets of girls to any churches for any fundraising.
**Malice:** Materially false and published with actual malice because Defendants recklessly disregarded fact-checking when presented with two conflicting reports. Secondly, Defendants knew it to be highly improbable that the girls schooling as far away as Oregon and seven hours away in the appalchia could possibly be brought "often" to DC churches for fundraising.
**Defamatory: Defendants portray Plaintiff as systematically fundraising gobs of money at churches with the girls.**

**Statement 16:** "[In one] May fundraiser, a raucous crowd of hundreds of evangelical Christians applauded him after he flipped through a slideshow of the Chibok students, and gave his charity $7,039 'for empowering those girls!' an announcer exclaimed, according to a video shot of the event."
Compl. Ct. I, ¶ 3(j).
☐ Not materially false

15

☐ Not defamatory as a matter of law
☐ Not published with actual malice.
THIS WAS NOT A FUNDRAISER – (Exh AV 3https://vimeo.com/121553581)

**Statement 17:** "In the video, Mr. Ogebe told the crowd he had just received a phone call from former U.K. Prime Minister Gordon Brown, an assertion he made in other public speeches: "He thanked me for what I am doing for the girls."
A spokesman for the former prime minister says "Mr. Brown is absolutely not in contact or communication with this person."

**False:** This is untrue.

**Facts:** Plaintiff was asked a specific question to which he responded. Plaintiff has spoken, corresponded and met with Gordon Brown and his staff. See exhibit

**Malice:** This was published in reckless disregard for the truth. It also illustrates Defendants' pettiness and personal animus against the Plaintiff that they would go so low as to trouble a former world leader about such a trivial non-issue. The only object of this, was to present Plaintiff in the worst possible light.

**Defamatory: Defendants portrayed Plaintiff as a liar.**

**Statement 18:** "When the young women complained, Mr. Ogebe told them they were shaming their families, they say. He told them he brought them to America and could send them back, and that Boko Haram, who
had seen them on television, could come after them, the young women, their handlers and the Nigerian government said."
**False:** This is false and an utter fabrication.
**Fact:** Nothing of the sort happened.
 **actual malice** This was neither contained in the embassy report or in any of the emails, defendants claimed to have. There is simply no proof of it and again it is highly improbable and illogical because the girls were temporarily in the US on non-immigrant visas. They were not refugees, asylees or permanent residents.

**Statement 19:** "Instead of comforting them Emmanuel took them around the mid Atlantic giving talks and using them as prop[s],"

**False:** This is false and an utter fabrication.
**Fact:** Nothing of the sort happened. Plaintiff did not take them around the mid Atlantic giving talks and using them as props.
 **actual malice** This was not even contained in the embassy report and should have been if true. The entire report had no factual references but merely opinions, assumptions, conjecture and conclusions bereft of validity.

 **Statement 20:** "In May 2015, Mr. Ogebe demanded the Oregon school fly the students to Baltimore, for a brief choir tour. They didn't come back. The school reported them missing."

**False:** This is false
**Fact:** The girls summer plans were agreed to by Wead long in advance and their entire

1 6

school breaks were premised on accommodation arrangements being made by Plaintiff from before they came to America. The girls were formally and legally transferred from Wead's Canyonville school through the DHS system in 2015 and could not have been missing. **actual malice** This was neither contained in the embassy report, which only said they were transferred and not missing, nor in the alleged FBI investigation. WSJ published it knowing it was *highly improbable* that five international students were reported "missing" in 2015 and *no amber* alert was issued, DHS did not revoke the students visas in *post-911 America* and FBI *did not question* Plaintiff about this EVER!

**Statement 21:** "He consistently brought documentation for only five of the students: 'In conversations and email exchanges, Mr. Ogebe has been evasive, always making excuses,' said the report."

**False:** This is untrue
**Fact:** Plaintiff provided information but embassy frustrated the process and never replied with a formal request when asked. Officials were provided the passports by the girls themselves in person but embassy did not make copies. The hostility and brutish behavior of Nigerian diplomate Ezinne towards the girls in that meeting was not inspiring. Plaintiff did not keep possession of the girls' passports as falsely alleged by Wead and Sullivan and debunked by him in one of their numerous wild accusations. The girls passports were with them.

**Malice:** It is putative that the only entity with Nigerian passport-issuing authority and database in America is the Nigerian embassy and not Plaintiff. It was highly improbable that the embassy did not have the passport information of its citizens especially when Plaintiff paid the embassy for issuance of passports. Published in reckless disregard for the truth.

**Statement 22:** "'We know that they are lies,' one of the students said, adding that Mr. Ogebe and his associates encouraged them to embellish their accounts. 'It's to make the story interesting so that people will like it so much.'"

**False:** This is false and an utter fabrication.
**Fact:** Nothing of the sort happened. Rather, Plaintiff tried to teach the girls not to disrespect US laws like not smuggling in items banned by customs when returning from vacation in Nigeria etc
 **actual malice** published with malice as WSJ falsely attributed to Plaintiff an act of unnamed actors. Defendants Drew Hinshaw and Joe Parkinson had asked this question in an interview and mentioned the Gadzamas, a local Nigerian couple whom they girls stayed with prior. Plaintiff wondered why they would do that? Defendants then fraudulently attributed it to Plaintiff!

**Statement 23:** "Mr. Ogebe was present, and emotional, according to people who witnessed the scene: 'You are wicked, wicked girls,' he screamed at them. 'Do you want to see me go to jail?'"

**False:** This is false. Plaintiff did not scream at the two girls at issue in Fairfax. The entirety of defendants' narrative on the Fairfax school affair was erroneous, misleading and downright dishonest.
**Fact:** Plaintiff's conversation with the girl was recorded and shows that he calmly asked if they wanted to send their American pastor host parent to jail by their behavior. Plaintiff had phoned the FBI, congress and the police with concerns prior to and during the DHS school

invasion. He subsequently had the other two girls, who refused to be taken by DHS and the embassy, evacuated to FBI offices in DC

**actual malice** Plaintiff informed WSJ of these recordings and offered the recording to the Defendants who, accepted the offer but refused to provide him a medium to send it through, instead publishing falsehoods in reckless disregard for the truth. While the cops came on plaintiff's behalf, Defendant's falsely claim the cops were called on him in direct contravention of the police report which he shared with them and the video evidence. Defendants suppressed Plaintiff's testimony in his interview that he called the FBI about the situation.

**Defamatory**: Defendants portray plaintiff negatively as an odious person who yells at students and someone who was in trepidation about being imprisoned.

**Statement 24:** "After speaking to Mr. Ogebe, school administrators came to believe the students were being tricked by the Nigerian embassy and its co-conspirators, who would send them back to Nigeria and possibly harm them."

**False:** This is false.
**Fact:** The girls' families informed the girls themselves, the Nigerian government and the Plaintiff, in writing and threw their lawyers, that they were not interested in the embassy's takeover. More importantly, the government did trick the girls and their families and Doug Wead who protested through lawyers to the State Department when most of the girls were again taken from him within weeks to Bronx, New York. The girls themselves were tricked that they were going to college in summer 2016 but most still are not at college level till date.

**actual malice** This was not contained in the embassy report and should have if true.

**Statement 25:** "Mr. Ogebe has already contacted him by telephone. Mr. Ogebe has in turn confirmed and denied any outreach." The narrative that Plaintiff was going to take Leah to school abroad as well.

**False:** This is false.
**Fact:** Plaintiff called to condole Mrs. Sharibu in February 2018, within days of the abduction of Leah, after his preliminary investigation identified Leah as the sole Christian schoolgirl taken out of 110. He subsequently greeted Mr. Sharibu after all the Muslim girls were released but Leah wasn't - a month later when the media began to first take notice of her.

**actual malice** Defendants told Plaintiff that they were told he was planning to bring Leah to school in the US but Plaintiff said "no", he was done/burnt with helping kids come to school in the US. Defendants lied because Leah was, and is still, unable to go anywhere in her second year of terrorist captivity.

**Defamatory**: Defendants portray Plaintiff as a liar.

**Statement 26:**
Zenn Statement: Ogebe "tries to portray himself as a go-to guy to talk about the (Boko Haram) insurgency."

**False:** This is false.
**Fact:** Plaintiff does not try to portray himself as anything. He has merely been focused on helping pro bono which is more than can be said for Zenn, Drew Hinshaw, Joe Parkinson and Dow Jones who are all in it for the money, literally.

18

**actual malice** This was a gratuitous attack on Plaintiff as a professional and highly unusual for an expert invited to testify in congress to launch an ad hominem attack on Plaintiff Ogebe the way that Jacob Zenn did.

WSJ reported that Plaintiff was critical of an administration official's unsubstantiated assumptions on Nigeria killings but did not say he attacked the official as an individual, as Zenn attacked him.

WSJ's dripping contempt was palpable.

This contradicts Zenn's remarks that day, "It is also an honor to be speaking next to **these distinguished panelists, especially it is important that Mr. Adamu is here to provide a personal face to issues that can seem so far away to people here.**" Defendants published the defamatory comments, which contradicted Zenn's complimentary remarks before Congress, knowing same to be false, which is malicious and defamatory per se as they requested and received information from Congress but still published defamation.

**Defamatory:** Charlatan and not an influencer.

**Statement 27:** "The principal at Mountain Mission called the police to stop him from entering the school with a BBC camera crew, emails from the school show."

**Defamatory per se** as an Imputation of criminal conduct by falsification of incident with police

**False:** Hinshaw and Wall Street Journal's allegation that Plaintiff had the police called on him for bringing media to one of the girls' school uninvited is false.

**Fact:** Plaintiff was actually invited to the President's office for a prescheduled meeting with the girls' hall teacher to discuss their progress and needs. Upon arrival alone, he was summarily ambushed by over half a dozen police cars already lying in wait for him. There were no media with Plaintiff at the time and Plaintiff asserted his rights and established his access authority via the school records before the police left.

In fact, unknown to Plaintiff, student Kauna Bitrus had prescheduled a follow-up interview with the BBC two weeks earlier before she left Nigeria. Ms. Bitrus voluntarily then conducted the said follow-up interview with the full consent and cooperation of the school after the police left. This was her sole interview in the US done at her behest to showcase her new US school - not tell her story.

Any assertion to the contrary claimed by the defendants and Ms Bitrus, including that she was forced to tell her story, is false. There was nothing to validate the false report instigated by Ann Buwalda of JUBILEE CAMPAIGN, Fairfax Virginia and documented as that a black man was coming to the school to raise a fuss and should be resisted with any necessary force. The school president apologized to Plaintiff and revealed that Ann Buwalda of Jubilee Campaign in Fairfax, Virginia put him up to the excessive and baseless reaction which could have turned deadly for Plaintiff as a black man in southern Virginia's backwoods (there was subsequently a racist incident on campus while the girls were there).

Furthermore, the school president had himself requested the Plaintiff for media coverage just days before, in the past and even after this incident, in addition to organizing his own media without Plaintiff's knowledge.

**Statement 28:** "The FBI investigated Ogebe for financial fraud in connection with his fundraising in the name of the students and concluded that he "had likely been keeping or misappropriating" some of the funds."

19

**False:** Plaintiff has never been interviewed by any US authority on any allegation of fraud.
**Fact:** On the contrary, it was Plaintiff who first reported to the authorities. Secondly, it is a violation of FBI policy to make prejudicial comments about a party who is not charged with any crime. As stated in Plaintiff's reports to the authorities, Doug Wead was actually **fundraising and keeping funds** when Plaintiff was taking care of the girls in another school and Wead had no girls in his charge.
**Malice:** Defendants had no basis in fact, law or logic for any attribution of financial misconduct to the plaintiff. This is defamatory per se.

**Statement 29:**" DHS agents launched an operation to extract the students from their schools and bring them to a safe house. Once free from Ogebe, the students said they no longer wanted to be associated with him and informed their families that they were no longer "kidnapped.""

**False:**

**Facts:** Doug Wead and his cohorts saturated the girls with text messages beginning in mid-2015 to call DHS trafficking line on Plaintiff Ogebe but they did not. By the end of 2015 the embassy drafted a letter and sent to the girls to sign. Again, they did not and contacted both the plaintiff and their families to inform them of the embassy's draft letter. Throughout this time, Doug Wead was sending DHS agents to the girls' school regularly. Plaintiff is not aware of the girls filing any reports to anyone since it was constantly instigated by Doug Wead.

The girls' parent/teacher visited from Nigeria and the girls themselves visited Nigeria freely and NEVER complained of being "kidnapped." The DHS falsely claimed they took the girls to an NGO for "trafficking victims" but in actual fact took them to Doug Wead's Virginia home (not a safe house) where, for several weeks, agents of the Nigerian embassy interrogated them for incriminating evidence against Plaintiff. When that failed woefully, they were then coached to lie against Plaintiff and bribed with gifts of electronics.

Plaintiff repeatedly asked the DHS and FBI to contact him if they had any concerns but they never did. The notion that an operation was planned to "extract the girls from their schools" where they were "kidnapped" is an obvious lie as the girls were not captives in their schools and Plaintiff Ogebe did not reside in their schools. As shown in the exhibits, some of the girls were induced or coerced while some of the girls refused the bribes and inducement to denounce Plaintiff Ogebe and go with the embassy/Doug Wead. Operatives of Wead and the embassy specifically made denunciation of Mr. Ogebe a precondition for consular support to the girls in text messages. (See Exhibit A).

**Malice:** Defendants failed to exercise basic intelligence and journalistic intellect in their summarization of the "dramatic rescue." Common sense says that if the girls were in any danger whatsoever, the authorities would have removed them since 2015 when Wead reported them "missing". The fact that they waited a year and then picked the girls on the last day of school, then waited another week, before picking the girls from the other school

also on the last day of school does not depict any sophisticated extractive operation but skulking, cowardly, hubris. Ironically, by this time, the girls' two-year visas were expiring. They had each been given a questionnaire providing them options to choose from going forward - whether the girls wanted to continue or leave the program, whether they wanted to visit their families in Nigeria and renew their visas or whether they preferred to attend summer classes in the US!

Defendants failed to ask the basic question why DHS would actively whisk girls with expiring US visas away from going abroad to to renew, as mandated by US law but rather have them roaming around the US with expired visas when DHS ironically is the agency responsible for ensuring legal presence in USA and is locking thousands of migrant children in cages.


**Statement 30:**

**False:** There's no such video. Quite on the contrary, Plaintiff never showed "a slideshow," and this was not a "fundraiser".

**Fact:** Plaintiff was invited to a Women's Conference, where he spoke for barely a minute and was given a donation to help bring more girls to the U.S. Wead took the video and began circulating it to all and sundry, claiming that Plaintiff was raising money, even though Wead himself had asked Plaintiff to raise money after Wead defaulted on his purported scholarship for the girls.

**Actual malice:** Defendants injected themselves directly into the defamation by acting as eyewitnesses of a video they claim they watched which did not support any of the false scenarios they had alleged – i. the girls were not present ii. They did not "tell" their story iii. They were not pulled out of school iv. They were not props in the background v. it was not a fundraiser, church, speaking engagement or political

21

platform.

Yet, Defendants published that fully knowing same is fabricated - conjuring the girls' presence there via hologram or slide presentation for effect. Defendants have not denied this nor exhibited the only verifiable evidence in their entire story. With these falsehoods, a far worse and defamatory imagery of hundreds of raucous evangelical women gathered for a fundraiser roused by plaintiff's exploitative rendering of the girls' pictures is evoked in the minds of readers.

This insidious falsification of what was on the video is highly significant because not only does the sole evidence that the Defendants actually saw for themselves not fit their story, but rather than concede and give Plaintiff the benefit of the doubt, they distorted it. Defendants surpassed adopting palpably false narratives of government dossiers and made those their own then they reframed a video to tell a story that it didn't show, putting themselves squarely ahead of the accusers in the defamation derby!

It is further evidence of aggravated malice that Defendants never asked Plaintiff about this event, in recklessness disregard for the truth, prior to publishing this defamation.

**Statement 31:** "their stories were exploited by others for profit and to advance political agendas."

**False:** It is false that the girls seeking the freedom of their still missing classmates was a "political agenda" and that they were exploited in their vigils with Congress members genuinely trying to rescue 219 abducted girls beyond mere hashtags.

**Fact:** Plaintiff attests that no monies were paid to him for the girls' visits to the congress or press conferences.

**Malice:** Defendants WSJ knew that congress and media do not pay and have created the bizarre and self-indicting scenario where press conferences seeking the release of girls

abducted by terrorists are demonized.

**Statement 32** WSJ's claim that he was "*de facto* guardian, exercising control over them even though they were all legally adults" and had legally "no authority."

**False:**

**Fact:** i. Plaintiff was duly designated guardian by the girls' families in documents authenticated both by Nigeria's Foreign Ministry, the courts and the American Embassy in Nigeria. (See Ogebe Exhibit C).

ii. This role was consistent in cultural practice for Nigerian international students schooling abroad who are assigned guardians and consistent with US International Exchange Programs, Fellowships, etc. that have program guidelines to be complied with by participants regardless of age. These include codes of conduct, program responsibilities, not violating US law etc. that go with even US adults in scholarship programs. Plaintiff attests that as the responsible person, he protected three schoolgirls and ensured that they were not sent back to Nigeria 11 days after they arrived in America as proposed by Jubilee Campaign following their abuse by an American host (Ex I).[2]

**Malice:** Defendants' distortion of such a basic concept amounts to willful prevarication and reckless disregard for the truth.

**Statement 33** he "had likely been keeping or misappropriating money he raised in the name of the Chibok students" and that the Nigerian government concluded that he"fraudulently exploited the ex-hostages for tens of thousands of dollars. "

**False:** The above quotation was defendants' and not a conclusion that was in the alleged embassy report. The alleged FBI quote is an unlawful speculation and the embassy's a baseless fabrication. In fact, WSJ's report did not say it was a quote from the FBI. It said it

---

[2]Only one of those three girls has not obtained a diploma/degree in the past five years. She was taken by DHS.   23

was the information of an anonymous person who was familiar with the conclusion of the investigation.

**Fact:** The embassy dossier recommended that the US government should be contacted to check into "unauthorized persons fundraising" - it *did not* name Plaintiff. With regard to Plaintiff, it said he should be "*made to account.*" Ogebe actually had students he was housing, feeding and paying tuition for in college and paid the embassy hundreds of dollars for the passports of two school girls.

**Malice:** Defendants maliciously and falsely conjured up the allegation that Plaintiff "fraudulently exploited the ex-hostages for tens of thousands." Defendants' statement violates Plaintiff's constitutional presumption of innocence and any alleged FBI source was clearly in violation of the DOJ's policy.

Defendants' showed reckless disregard for the truth by not noting that neither of them confronted or interviewed Plaintiff about monies (no fair hearing) and no donor had filed a complaint about their money.

Further, they suppressed the fact that in the embassy report, it was Wead and others who clearly depleted the Jubilee fund for the girls' other needs despite their claims of scholarships to them.

(*Id.* Hinshaw Exhibit C). In addition, Defendants' suppressed the fact that Wead directed Plaintiff to raise funds for the girls' future expenses and that after Jubilee was dropped for non-performance, Plaintiff was forced to fend for the girls. *(See Ogebe Exhibit E1-2).*

Defendants, by sleight of hand, said it was the information of an anonymous person who was familiar with the conclusion of the investigation so **not really the FBI.**


**Statement 34** Defendants say, "Another student recorded a video distributed to the media in which she stated that "[a]ll the things that have been said about our Uncle Emmanuel are true."

24

Fact: the purported statement of the girl that "all that was said about" Plaintiff was "true" clearly reveals that the allegations were not made by the girls but by others which the girls were then asked to affirm. The girls have consistently denied these allegations before, during and after their departure in 2016 as well as apologized. They have also repudiated the WSJ's defamatory article.

This was all a carefully orchestrated made-for-TV farce. If this had truly been about the welfare of the girls and protection from intrusive media, it doesn't explain why their *first priority* was to unleash a media barrage against the Plaintiff. The so-called dramatic rescue was a classic case of Federal overkill, unnecessarily running roughshod over local authorities, private premises and homesteads. Plaintiff was so oblivious to their shenanigans that he ironically only heard about the girls taken into custody in Grundy when he was called by a journalist who broke the news to him. In other words, the media were involved in the so-called covert operation even before it happened!

**Malice:** Some of the girls refused to sign the spurious allegations because they knew it was false. The Defendants were aware of this and still published the defamatory article. Five of 12 students refused to leave the Plaintiff and be taken by the embassy/DHS (the gifted students.) Two of the seven (under-performing students) **refused to sign** the false allegations against the plaintiff Ogebe. In all, at least 7 out of 12 students in Plaintiff's education program did not join in the attacks and accusations against Plaintiff (More than 70%) in 2016 when it happened but Defendants in reckless disregard for the truth published a story that most of the girls did not subscribe to. Since 2016,virtually all of the girls have either recanted, apologized, reached out and are in contact with Plaintiff.

**Statement 35**: he "took some of them for speaking engagements around the U.S.and, later, abroad".

2 5

**False:** The girls taken by the embassy did not go on speaking engagements around the US and abroad with Plaintiff. It is instructive that despite practicing their deceit for three whole years (2015-2018), Wead and co. still couldn't get their stories straight nor did the defendants.

**Malice:** A critical aspect of the Defendants chicanery is dissemblance and dissimulation. By this deceptive practice, they ascribe actions and incidents to an amorphous group thus making it difficult to fact check. In this underhanded "cut and paste" journalism, Defendants take different situations involving the group of girls that refused to be taken by the embassy and lump them with the girls who were. This goes to the heart of Defendants' proactive publication of untruths – actual malice.


**Statement 36** he "wanted one of the students to become a star".

**False:** Plaintiff had remarked that Malala was a good example of a schoolgirl survivor of terror.

Only in Defendant's warped minds would inspiring a young woman after a good role model who won a Nobel Peace Prize by standing up to terror be a bad thing.

**Fact:** Malala herself identified with the Chibok cause and flew to Nigeria to spend her birthday advocating for them.

**Malice:** Defendants' denigration of this role model is what President Bush called the "soft bigotry of low expectations" for people of color.

**Statement 37:** "Ogebe[l]egally. . . had no authority over them".

**False:** Plaintiff is not a self-appointed Guardian but was appointed by the girls' families with notarized documents by the courts and a video declaration by the girls' parents. (See Ogebe Exhibit AV1 ). He assumed greater responsibility when Doug Wead reneged on his fake scholarship and began to extort Plaintiff for money.

**Fact:** The girls were under a program with a code of conduct and responsibilities. Even their adult American host families had a code of conduct and responsibilities regardless of being full age. Defendants' also have codes of conduct such as restrictions from work place dalliances, for example. Defendants cannot claim they are consenting adults so they can conjugate in WSJ's bathrooms during their lunch "free time" as WSJ has no legal authority over their break time. To this day, ironically, the girls have a management framework over them whom the Defendants called their "*handlers*". They are not roaming free in America and are actually now constrained like their mates in Nigeria.

**Malice/Defamatory:** Defendants' report directly contradicts the embassy report recommendations that Plaintiff be "stripped of guardianship" as one cannot strip what does not exist. The embassy report concluded it had no authority to appoint guardians and "strip" Plaintiff of his guardianship. Defendants lied when they reported that he was self-appointed and thus defamed Plaintiff yet again as an abductor.

### 25. <u>Plaintiff is Not a Public Figure</u>

25.     Ogebe can't be said to have access to effective communication if the WSJ itself had never once interviewed him with relation to anything. While Defendants had interviewed a co-panelist Zenn, they deemed Plaintiff unworthy of their attention until they wanted to malign him.

In 2015, Plaintiff sent an op-ed to Defendants which they declined to use. In March 2018, he sent an update about an abducted girl which they declined to use. After the defamatory publication in 2018, Defendants again refused to publish his rejoinder. Defendants clearly indicate that he was of no consequence or significance other than for purposes of pillorying him.

26. Plaintiff did not place himself "at the center of both the general controversy". Defendants' carefully planted a quote through their "public figure" of choice on Nigeria, to create exactly the faux impression they wanted as protection for their defamatory hit job. Thus Jacob Zenn is not familiar with the Plaintiff other than being on a panel together said uncannily that plaintiff tries to present himself as a "go-to guy" on Nigeria. This statement which Plaintiff showed extensively as false was carefully crafted for the sole purpose of providing legal cover to defame the Plaintiff as a home-made "Public Figure." Defendants demeaning and contemptuous digs at his congressional testimony disproves that they actually considered him a bona fide public figure. While the abduction of the girls in Nigeria was a hashtag issue, the question of their studies and care in the US was never a national issue or controversy of note.

27. Though the controversies involving Boko Haram and the Chibok students preceded publication of the Article, the reports were three years old as Plaintiff pointed out to Defendants in their phone chat. There was no controversy on the issue of the girls care that warranted the resurrection of an old story. Some of the girls had even apologized for their behavior and issues been long forgotten but for the vampirish peel-off of the band aid by Defendants. "It is relatively easy for a limited-purpose public figure to lose his status if the controversy in which he is involved has been largely forgotten." *Brewer v. Memphis Publishing Co.*, 626 F.2d. 1238 (5th Cir. 1980). Foretich v. Capital Cities/ABC, Inc., 37 F.3d 1541, 1551-52 (4th Cir. 1994)

28. Plaintiff's advocacy has always drawn the attention of the Nigerian Government for several decades including his abduction, torture, unlawful imprisonment which led to exile in the US and over the last decade surveillance by the Nigerian embassy here in the US.

29. Plaintiff did not retain public figure status at the time the Article was published

29

as Defendants' own conduct indicates. The other girls who were not taken by the embassy continued on to graduate from High School as the first to do so in America in 2017 but Defendants did not find this noteworthy. Their narrow focus was squarely on the sabotage by Wead and the embassy in 2016 and not any successes of the other girls. Further evidence of Defendants malicious intent was that they never addressed or were concerned about the instability, retrogression and failures that trailed the girls after they were taken. Seven girls were taken from school to Wead's Virginia house in May/June 2016, then moved to his in school in Oregon in July, then five girls were removed from Wead in Oregon to Bronx New York and then some dropped out of school then most ended up in Pennsylvania.(See Ogebe Exhibit F1-2.) In the two years of floating aimlessly around and mostly failing to pass their GEDs, their classmates who didn't follow the embassy where obtaining diplomas and legitimately attending community colleges. Defendants' actual malice was in their reckless disregard for the truth and lack of true concern for the girls' which was subsumed by their objective to defame the plaintiff.

30. Defendants cannot in real life treat Plaintiff as a nobody but then solely for the sake of self-preservation conjure him into a public figure for the limited purpose of destroying him. A public figure is one who has access to media to be able to *defend himself effectively*. Even Defendants *refused him access to publish his rejoinder* notwithstanding that he was the object of the article! More so because of their devastating portrayal of Plaintiff as a liar and a rogue, Plaintiff has lost whatever so-called status he might have had and is unable to marshal media. To accept Defendants claim that he is a public figure with effective means of communication, which they themselves denied him, solely for the limited purpose of destroying him further, is to allow them to benefit from their tortuous act!

## B. THEORIES OF ACTUAL MALICE

30

31. Defendants clearly entertained serious doubts as to the truth of the embassy report which alleged that the Plaintiff did not spend a dime on the girls. This is not mere rhetorical hyperbole in an off-the-cuff interview. It was carefully crafted as a finding of fact in an embassy "investigation." Not spending "a dime" is a clear mathematical proposition that is calculable. Defendants obviously entertained doubts on a lie they characterized as exaggeration and allegedly inquired further from the FBI who told them that Plaintiff had incurred costs in housing and transporting the girls. (The embassy report admitted Plaintiff housed and transported the girls to school but still declared he had not spent a dime on the girls.) Defendants knew this to be, not merely "beyond a high degree of awareness of probable falsity", but outright falsehood and maliciously published same.

32. Despite being disproven by the dubious FBI source, Defendants watered down the exculpatory evidence citing an unnamed source who merely cast a speculative and specious aspersion on Plaintiff in violation of established FBI policy and Plaintiff's constitutional presumption of innocence and who might not even be FBI but a thirdhand hearsayer. Defendants used an unusually large amount of anonymous sources and non-attributed allegations.

33. Again, Defendants obviously entertained doubts on the embassy's report that Plaintiff was not responsible for bringing the girls to the US. However after determining this as untrue, they then invented a fresh new falsehood that Plaintiff physically went to a school and practically kidnapped the girls from Nigeria to the US.

34. Plaintiff denies that Defendants relied on multiple sources for their reporting. They relied on a well-coordinated group who had several years of practice to rehearse

their lies sprinkled with one or two contrived quotes procured by Defendants for self-protection. He was never told who his accusers are or what their claims were other than the government's report and was never asked about much of what was published. The issues here are his constitutional right to be confronted by his accuser or, at minimum, their accusations even in the court of public opinion were disrespected. Plaintiff was entitled to a fair hearing, equal time or, at minimum, just a hearing even if not a fair one. He got none.

35. This was not merely failure to investigate or meet minimum journalistic standards. Neither the FBI nor Nigerian embassy said they had interviewed Plaintiff on ANY of the allegations. The Nigerian government said they were skeptical that he brought the girls to the US and wrote a report reaffirming their bias. Defendants found that he indeed brought the girls to the US thereby deconstructing the very foundation of their declared suspicion.

36. It was bad enough that Defendants failed to ask the embassy/FBI why Plaintiff was never interviewed on these issues. However, when Defendants had an opportunity to engage with the Plaintiff, they did not. This was reckless disregard for the truth! Defendants phoned Plaintiff during dinner while he was abroad, exhausted from his defamation trial that same day and sandbagged him literally hours to publication. Defendant Parkinson even hung up on the call!

34. The girls were lawfully transferred to a better school, after Wead failed his financial responsibility to them and admitted to fraud and after the students performed below their counterparts, by a parent and former teacher of the girls in conjunction with the Plaintiff. Defendants' claim of "unlawful" transfer is unknown to law, concocted and malicious and defamatory per se.   32   TBC

WHEREFOR Plaintiff Ogebe has been grievously defamed in his profession, in his person, in his humanitarian work and in his global standing in the eyes of the public through the malicious publication of falsehoods by the defendants to the world. Defendants are liable to Plaintiff for the above and judgment should be entered against them accordingly.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court enter an award in Plaintiff's favor, and against Defendants, as follows:

(I)    awarding  Plaintiff Emmanuel Ogebe compensatory damages of   not less   th $10,000,000.00;

(2)    awarding Plaintiff Ogebe punitive damages of not less than $1,000,000.00;

(3)    awarding Plaintiff Ogebe all expenses and costs, including attorneys' fees; and

(4)    awarding an apology to be published in various global media of Plaintiff's choosing

(5)    awarding an injunction restraining defendants from further defamatory publications against the Plaintiff

(6)    awarding such other and further relief as the Court deems appropriate.

A JURY TRIAL IS DEMANDED.
Dated: 1/24/2020

Respectfully Submitted,

Emmanuel Ogebe

1025 Connecticut ave NW

#1000
Washington DC 20036

*Plaintiff Proceeding Pro Se*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRIGINIA**
**_____ DIVISION**

Emmanuel Ogebe
_____
Plaintiff(s),

v.

Dow Jones & Co et
_____
Defendant(s).

Civil Action Number: 1:19 000426

## LOCAL RULE 83.1(M) CERTIFICATION

I declare under penalty of perjury that:

No attorney has prepared, or assisted in the preparation of Amended Complaint.
_____
**(Title of Document)**

Emmanuel Ogebe
_____
Name of *Pro Se* Party (Print or Type)

_____
Signature of *Pro Se* Party

Executed on: 1242020 (Date)

**OR**

The following attorney(s) prepared or assisted me in preparation of _____.
**(Title of Document)**

_____
(Name of Attorney)

_____
(Address of Attorney)

_____
(Telephone Number of Attorney)
Prepared, or assisted in the preparation of, this document

_____
(Name of *Pro Se* Party (Print or Type)

_____
Signature of *Pro Se* Party

Executed on: _____ (Date)