IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| EMMANUEL OGEBE,<br><br>Plaintiff,<br><br>v.<br><br>DOW JONES & COMPANY, DREW HINSHAW, JOE PARKINSON, AND GBENGA AKINGBULE,<br><br>Defendants. | Civil No. 1:19-cv-00426-LO-IDD |

**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

Matthew E. Kelley, Va. Bar No. 84045
Michael D. Sullivan (admitted *pro hac vice*)
Ballard Spahr LLP
1909 K Street NW, 12th Floor
Washington, DC 20006
T: (202) 508-1112
F: (202) 661-2299
kelleym@ballardspahr.com
sullivanm@ballardspahr.com

Michael Berry (admitted *pro hac vice*)
Ballard Spahr LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103
T: (215) 665-8500
F: (215) 864-8999
berrym@ballardspahr.com

*Counsel for Defendants*
*Dow Jones & Company, Inc.,*
*Drew Hinshaw, and Joe Parkinson*

## **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................................................... 1

FACTUAL AND PROCEDURAL BACKGROUND.................................................................... 2

ARGUMENT................................................................................................................................... 4

    I.   OGEBE CANNOT STATE A CLAIM BECAUSE THE ARTICLE'S REPORTING IS SUBSTANTIALLY TRUE AND THE INDIVIDUAL CHALLENGED STATEMENTS ARE NOT MATERIALLY FALSE, ARE NOT DEFAMATORY, AND/OR ARE PRIVILEGED. .............................................................. 4

    II.  OGEBE CANNOT PLAUSIBLY PLEAD THAT THE ARTICLE WAS PUBLISHED WITH ACTUAL MALICE........................................................................... 8

CONCLUSION............................................................................................................................... 16

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Aronson v. Wiersma*,
    483 N.E.2d 1138 (N.Y. 1985) ................................................................................................. 5

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ................................................................................................................ 9

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) ................................................................................................................ 9

*Chapin v. Knight-Ridder, Inc.*,
    993 F.2d 1087 (4th Cir. 1993) ................................................................................................. 6

*Church of Scientology International v. Time Warner, Inc.*,
    932 F. Supp. 589 (S.D.N.Y. 1996) ......................................................................................... 7

*Harte-Hanks Communications, Inc. v. Connaughton*,
    491 U.S. 657 (1989) .............................................................................................................. 11

*Hatfill v. N.Y. Times Co.*,
    488 F. Supp. 2d 522 (E.D. Va. 2007), *aff'd* 532 F.3d 312 (4th Cir. 2008) ............................. 7

*Horne v. WTVR, LLC*,
    893 F.3d 201 (4th Cir. 2018) ................................................................................................. 9

*Masson v. New Yorker Magazine, Inc.*,
    501 U.S. 496 (1991) ................................................................................................................ 6

*Mayfield v. NASCAR*,
    674 F.3d 369 (4th Cir. 2012) ............................................................................................ 8, 9

## PRELIMINARY STATEMENT

Plaintiff Emmanuel Ogebe cannot state a defamation claim as a matter of law. Last November, the Court granted Defendants' motion to dismiss his defamation complaint on multiple grounds. In doing so, the Court identified an array of legal deficiencies in Ogebe's complaint and issued several significant rulings. Nevertheless, because Ogebe is proceeding in this case *pro se*, the Court permitted him to file an amended complaint. While granting Ogebe this relief, the Court explained to him that he is a limited-purpose public figure and that its rulings at the hearing narrowed the scope of any potential claims. Ogebe was given two months to attempt to remedy the legal deficiencies of his original complaint and was told that any effort to do so must comply with Rule 11 of the Federal Rules of Civil Procedure.

Rather than heed the Court's instructions, Ogebe's amended complaint purports to *double* the number of statements at issue, seeks to challenge numerous statements the Court explicitly held are not actionable, and falls well short of overcoming the legal failures that caused his original complaint to be dismissed. As Defendants previously demonstrated, Ogebe cannot state a viable defamation claim because (1) the Article as a whole is substantially true; (2) the individual challenged statements are not materially false, are not defamatory, and/or are protected by the fair report privilege; and (3) Ogebe cannot plausibly plead facts demonstrating the Article was published with actual malice. Indeed, in addition to filing an amended complaint, Ogebe submitted two recordings containing portions of interviews that Defendants conducted with him. Those recordings reveal that Ogebe's characterization of his contact with Defendants is false and directly contradict what he alleged in his original complaint and in his amended complaint.

Ogebe has had many months to establish the viability of his lawsuit, has submitted piles of papers and other exhibits to the Court, and was given a second chance to address the legal

deficiencies in his first complaint. Yet, despite all of those submissions, and as now shown by his amended complaint, he has resorted to misrepresentation and simply cannot state a claim for defamation. Thus, for each of the separate and independent reasons Ogebe's complaint was dismissed initially, Defendants respectfully request that this case now be dismissed with prejudice.

## FACTUAL AND PROCEDURAL BACKGROUND[1]

Plaintiff Emanuel Ogebe is an outspoken Nigerian lawyer and self-proclaimed "lifelong humanitarian" who "created a project to relocate some of the schoolgirls" who had been abducted by the Boko Haram terrorist organization in Nigeria. Am. Compl. ¶¶ 1, 12, 13. In 2018, defendant Dow Jones & Company, Inc. ("Dow Jones") published an article in *The Wall Street Journal* ("WSJ") about the controversy surrounding the students' experience after they arrived in the United States. Dkt. 19-1. That article – titled "The American Ordeal of the Boko Haram Schoolgirls" – was written by defendants Drew Hinshaw, Joe Parkinson, and Gbenga Akingbule (the "Article"). The Article details the various sides of the controversy, the ensuing government investigations of Ogebe in connection with his fundraising for and treatment of the students, and the operation ultimately conducted by the Department of Homeland Security (DHS) to extract the students from Ogebe's control.

The following year, Ogebe filed this lawsuit, claiming that the Article defamed him. Initially, Ogebe served his complaint only on Dow Jones, which moved to dismiss the case on

---

[1] Given the extensive briefing on Defendants' earlier motion to dismiss and the Court's familiarity with the underlying facts, this Memorandum provides only an overview of the case's procedural history. The factual background is discussed on pages 2-5 of the memorandum filed by Dow Jones & Company, Inc. in support of its original motion to dismiss and throughout the argument sections of that brief and Defendants' consolidated reply brief. (Dkts. 18, 72). To the extent that Ogebe's amended complaint adds any new material factual allegations, they are discussed in the argument section of this memorandum.

July 24, 2019.  (Dkt. 17).  After Dow Jones agreed to accept service for its two employees named as defendants, Hinshaw and Parkinson, they joined in the motion to dismiss.  (Dkt. 28).[2]  More than three months after Dow Jones filed its motion, Ogebe filed his opposition along with two declarations and reams of exhibits.  (Dkts. 68, 69, 70, 71).  Defendants then filed their reply brief (Dkt. 72), and the Court heard oral argument on November 22.

At that hearing, the Court made several significant rulings.  First, it held that "New York law applies" to Ogebe's claims.  Tr. 20:13 (Dkt. 85).  Second, it held that many of the statements Ogebe challenged in his complaint are protected by the fair report privilege.  *See* Tr. 21:8-18.  Third, it held that a number of the other challenged statements are not actionable as defamation.  *Id. at* 20:18-24, 21:1-2 (citing examples); *see also id*. at 21:19-21 (explaining to Ogebe that "[y]ou haven't shown really that these are defamatory statements").  Fourth, it held that Ogebe is a limited purpose public figure and thus is required to plead and prove actual malice.  *Id*. at 20:8, 20:11; *see also id*. at 25:6-9 ("I now have clearly identified that you are a limited public figure.  And that raises the bar on the actionable statements to actual malice.").  Finally, the Court ruled that despite Ogebe's lengthy complaint and voluminous supplemental filings, he had failed to meet that constitutional burden.  *Id*. at 20:7-8 ("I don't find any actual malice here.").

In light of these rulings, the Court dismissed Ogebe's complaint.  Nevertheless, recognizing that Ogebe is proceeding *pro se*, the dismissal was without prejudice.  *Id*. at 21:22 – 22:1.  At the hearing, the Court explained to Ogebe what was required to state a viable defamation claim and provided guidance on issues Ogebe should consider when deciding whether to file an amended complaint.  *See, e.g.*, *Id*. at 22:14 – 23:12, 25:14-16.  Among other things, the Court told Ogebe that a claim is not viable just because he "disagreed with some of

---

[2] Ogebe has not served the third individual named as a defendant, Akingbule.

3

the people that [Defendants] reported having said certain things," *id*. at 22:22-23 and instructed him "to focus on statements that just aren't inaccurate in your mind or that you could prove were inaccurate, but facts – limit them to statements in that article that you believe are defamatory and were stated because of actual malice." *Id.* at 25:10-14.

Following the hearing, the Court issued an order granting the motion to dismiss and providing Ogebe with more than two months to file an amended complaint "if he can meet the Federal Rule of Civil Procedure 11 requirements in presenting allegations that address the current Complaint's deficiencies." Nov. 22, 2019 Order (Dkt. 82).

On January 24, 2020, Ogebe filed what he subsequently described as a "placeholder" amended complaint. Dkts. 90, 93 at 2-3. That complaint spans 32 pages, many of which are single-spaced. And, although Ogebe said at the hearing that he understood the Court's instructions and would heed its rulings substantially "narrowing" the scope of any potential claim, Tr. 22:14-15, his amended complaint nearly *doubles* the number of challenged statements (jumping from 19 to 37). Despite seeming to expand the scope of his grievances, Ogebe's amended complaint merely rehashes the same claims he raised in his original complaint and adds nothing new of substance.

For the reasons detailed previously and reiterated below, Ogebe's amended complaint fails to state a claim for defamation.

## ARGUMENT

I. **OGEBE CANNOT STATE A CLAIM BECAUSE THE ARTICLE'S REPORTING IS SUBSTANTIALLY TRUE AND THE INDIVIDUAL CHALLENGED STATEMENTS ARE NOT MATERIALLY FALSE, <u>ARE NOT DEFAMATORY, AND/OR ARE PRIVILEGED.</u>**

In response to Ogebe's original complaint, Defendants argued that his defamation claim cannot stand because he cannot meet the essential elements for such a claim under New York

4

law and because many of the statements in the Article are protected by that state's fair report privilege. Nothing in his amended complaint can, or does, remedy those grounds for dismissal.

Indeed, Ogebe's amended complaint essentially attempts to restate the same claims in a different form. His new pleading is nothing more than a shell game. While rearranging his allegations and seeming to increase the theories of potential liability, Ogebe challenges the same statements that he challenged originally. In fact, his amended complaint includes many statements the Court already expressly held are not actionable.[3] Several of the amended complaint's challenged statements are redundant of each other, as Ogebe seeks to assert different claims based on the same passages of the Article, all of which were raised in his original complaint.[4] Many other challenged statements are merely isolated phrases from the Article coupled with characterizations added by Ogebe.[5] And, still other challenged statements are not even in the Article.[6]

---

[3] *See, e.g.*, Statements 3, 6, 11, 12, 21 (statements from Nigerian government reports protected by fair report privilege); Statements 5, 14, 15, 16 (not defamatory).

[4] *See, e.g.*, Statements 32, 37 (both referencing Ogebe's asserted guardianship over students who were over 18 years old); Statements 4, 6, 28, 33 (asserting overlapping allegations relating to the Nigerian reports about and FBI investigation into Ogebe's fundraising).

[5] *See, e.g.*, Statements 2, 29, 31, 32; *see also Aronson v. Wiersma*, 483 N.E.2d 1138, 1139 (N.Y. 1985) (explaining that words and statements must be read in context, the challenged publication must be construed as a whole, and the meaning alleged by the plaintiff must be reasonable).

[6] For example, in Statement 13 Ogebe seeks to hold WSJ liable for "a claim by Doug Wead that 'Mr. Ogebe and his wife, Morinke . . . kept monies raised,'" but that statement appears nowhere in the Article. Am. Compl. at 14. Likewise, for Statement 9, Ogebe claims that he was defamed by a statement that he "emphasized Boko Haram's 'stated objective to eliminate Christians in northern Nigeria' and criticized a DHS official's 'narrative' that 'more Muslims than Christians were killed,'" but that statement also was not in the Article. *Id.* at 12.

5

At bottom, like the original complaint, the amended complaint continues to focus on Ogebe's disagreement with the accusations indisputably leveled against him by myriad individuals, entities, and government agencies, and his claims continue to rest on his view that Defendants simply should have accepted his side of the story. As Defendants argued at length already, Ogebe's claims fail as a matter of law for several reasons, all of which require dismissal of his recast amended complaint:[7]

***First***, the Article as a whole is substantially accurate. Dkt. 18 at 6-7, 10-13; Dkt. 72 at 2-5. Its gist and sting are not materially false, and Ogebe cannot create a claim by pointing to individual alleged inaccuracies that are immaterial. *See, e.g.*, *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 517 (1991) ("Minor inaccuracies do not amount to falsity so long as 'the substance, the gist, the sting, of the libelous charge be justified.'"). As the Fourth Circuit has explained, "where the alleged defamatory 'sting' arises from substantially true facts, the plaintiff may not rely on minor or irrelevant inaccuracies to state a claim for libel." *Chapin v. Knight-Ridder, Inc.*, 993 F.2d 1087, 1092 (4th Cir. 1993).

Here, Defendants' reporting on the key events is indisputably true:

- Ogebe spearheaded an effort to bring the students to the United States, where he claimed to serve as their guardian even though they were 18 years old or older;

- He secured appearances for the students in the media and before Congress;

- Police were called to remove Ogebe from one school's property;

- Ogebe unilaterally transferred students from Doug Wead's school in Oregon to a school in Virginia, prompting complaints by Wead;

---

[7] The various arguments Defendants previously made for dismissal continue to apply to Ogebe's amended complaint with equal force. Rather than repeat those arguments in detail, this memorandum summarizes them and cites to the relevant sections of the prior briefing that address each issue.

6

- Ogebe raised funds for the students and then was accused of financial improprieties and mistreating the students;

- Ogebe's conduct was investigated by both the Nigerian and United States governments; and

- After several students sought to be rescued, DHS deployed agents to two schools to remove the students from Ogebe's control.

Dkt. 18 at 10-13, 14, 16, 18, 21, 23, 25; Dkt. 72 at 2-5.

Although Ogebe continues to challenge a litany of statements in the Article, a plaintiff cannot prevail when the challenged statements are "subsidiary" to the publication's main gist and the alleged false statements "impl[y] the same ultimate conclusion as that of the remainder of the publication." *Church of Scientology Int'l v. Time Warner, Inc.*, 932 F. Supp. 589, 594-95 (S.D.N.Y. 1996) (quoting *Herbert v. Lando*, 781 F.2d 298, 311 (2d Cir. 1986)), *aff'd sub nom. Church of Scientology Int'l v. Behar*, 238 F.3d 168 (2d Cir. 2001); *see also Hatfill v. N.Y. Times Co.*, 488 F. Supp. 2d 522, 532 (E.D. Va. 2007) (same), *aff'd* 532 F.3d 312 (4th Cir. 2008). Accordingly, even if Ogebe's amended complaint could identify some alleged falsity, he cannot state a claim because the core damaging facts reported in the Article are true.

***Second***, the individual statements challenged by Ogebe are not materially false and/or are not defamatory. *See* Dkt. 18 at 13-25. His amended complaint does nothing – and can do nothing – to remedy these deficiencies.

***Third***, as this Court previously recognized, many of the statements that Ogebe challenges are protected by New York's absolute privilege for fair and substantially accurate reports on government records and proceedings. *See supra* at 5. Many of the Article's statements are drawn directly from Nigerian government reports. *See* Dkts. 19-2, 19-3; Tr. 21:8-18. For example, the Nigerian Embassy Report details complaints about Ogebe's fundraising, his alleged improprieties in dealing with the Jubilee Campaign, his alleged mistreatment of the students, his

7

evasiveness when the Embassy asked him for documentation about the students, his actions when he "illegally withdrew" the students from Wead's school, and a school principal's call to "the police to stop Mr. Ogebe from coming to the school with [a] BBC crew to interview the girls." Dkt. 19-2. Likewise, portions of Defendants' reporting about the DHS rescue operation are drawn directly from the recording of a 911 call during the operation and a police report describing that operation and the relocation of the students "due to allegations of abuse by their current guardian," who was identified as Ogebe. Dkts. 19-4, 19-5. Under New York law, the Article's reporting based on these government records is absolutely privileged. *See* Dkt. 18 at 8-10, 13-14, 18, 21, 23; Dkt. 72 at 14-17.

For each of these separate and independent reasons, Ogebe's amended complaint should be dismissed with prejudice.

## II. OGEBE CANNOT PLAUSIBLY PLEAD THAT THE ARTICLE WAS PUBLISHED WITH ACTUAL MALICE.

This Court held that in his original Complaint, Ogebe failed to meet his obligation to plead facts that would plausibly establish Defendants published the Article with actual malice – that is, with knowledge of falsity or a high degree of awareness of probable falsity. Tr. at 21:19 ("[Y]ou haven't shown actual malice."); *see also Mayfield v. NASCAR*, 674 F.3d 369, 377-78 (4th Cir. 2012) (affirming dismissal of defamation claim where plaintiff failed to plausibly plead actual malice). At the November hearing, this Court attempted to focus Ogebe's attention on the actual malice pleading requirement, advising him that Defendants are "permitted to publish that information unless they at the time knew it was wrong and did it purely to defame you, and knowingly did that," Tr. at 22:19-21, and urging him to limit his Amended Complaint to "statements in that article you believe are defamatory and were stated because of actual malice," *id.* at 25:12-14. Ogebe has not done that.

8

The Amended Complaint still falls far short of meeting Ogebe's burden to plead facts that would establish actual malice as to each challenged statement. *See Horne v. WTVR, LLC*, 893 F.3d 201, 211 (4th Cir. 2018). As Defendants explained in their earlier briefing, neither an alleged failure to investigate nor an alleged departure from journalistic standards standing alone constitutes actual malice. *See* Dkt. 18 at 28 (citing *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 688 (1989)). Likewise, the actual malice standard is not satisfied by either negligence or "malice" in the ordinary sense of ill will. *Id.* at 28-29. Instead, actual malice is a subjective standard that requires, at the pleading stage, facts that plausibly show that those responsible for the Article "in fact entertained serious doubts as to the truth of the publication." *Id.* at 28 (quoting *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968)).

Of course, to satisfy his burden to plead facts plausibly showing actual malice, Ogebe must satisfy the requirements of *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). In evaluating whether a plaintiff has met this standard, courts disregard conclusory allegations and unreasonable inferences drawn by the plaintiff. *Iqbal*, 556 U.S. at 678-79; *Mayfield*, 674 F.3d at 377-78. And, although a plaintiff might allege that a defendant's conduct is tortious, a complaint fails to establish a plausible entitlement to relief if there is an obvious alternative, lawful explanation. *Iqbal*, 556 U.S. at 682. This context-specific analysis requires the Court to "draw on its experience and common sense." *Id.* at 663-64.

As Defendants noted in their prior motion to dismiss, Ogebe admits that he has been the subject of allegations of financial impropriety and misconduct related to the Chibok students. *See* Dkt. 72 at 9-13. Ogebe also admits – and has provided substantial documentation establishing – that such accusations have been made or credited by the DHS, the FBI, the Nigerian government, several of the Chibok students themselves, Wead, and the Jubliee

9

Campaign. *Id.* at 2-4 & nn. 1-8; *id.* at 11-12. To believe that Defendants subjectively knew the allegations against Ogebe were probably false is to believe that Defendants either knew of or participated in a vast anti-Ogebe conspiracy involving agencies of two countries' governments, numerous individuals around the United States, and a handful of schools and nonprofit organizations. *Id.* at 11-12. Ogebe has not pleaded any facts that would plausibly suggest Defendants had that kind of knowledge or participation.[8]

Although the Amended Complaint does include allegations attempting to establish actual malice with respect to most of the statements at issue, nearly all of those allegations merely reprise the insufficient averments from the original Complaint. Like Ogebe's original Complaint, the Amended Complaint invokes conclusory "actual malice buzzwords," *see, e.g.*, Statements 6, 15, 17; objects that Defendants did not ask Ogebe about certain accusations or ignored his side of the story, *see, e.g.*, Statements 10, 14, 33; asserts that actual malice can be inferred because of the alleged falsity of the statements, *see, e.g.*, Statements 2, 4, 7-8, 18-20; and claims that Defendants quoted unreliable sources, *see, e.g.*, Statements 13, 26, and 34. *See also* Dkt. 18 at 29-34; Dkt. 72 at 9-13 (explaining in detail the insufficiency of these contentions). These allegations do not plausibly establish actual malice, as this Court already ruled.

And, although Ogebe adds some new factual allegations to support his claim of actual malice, those allegations are woefully insufficient.

*First*, some of the actual malice allegations in the Amended Complaint are new only because they contradict the allegations of the original Complaint. For example:

---

[8] Ogebe's claim of actual malice rings particularly hollow because the Article details Ogebe's side of the story and his counter-accusations against his accusers. *See* Dkt. 72 at 10-11.

10

- For Statement 10 – the description of Ogebe's visit to a Nigerian school accompanied by students' parents to take the students to a different city – the Amended Complaint alleges that WSJ "suppressed Plaintiff's rebuttal that he was never there." Am. Compl. at 13. The original Complaint alleges, by contrast, that "Defendants Drew Hinshaw and Joe Parkinson never asked Plaintiff [about these details] in their solitary phone interview." Compl. at 14-15. In any event, Ogebe has admitted multiple times that he was responsible for "relocating" students to the United States, and, even crediting his new allegation, Ogebe's denial to the reporters that he did not relocate these particular students is insufficient to show actual malice. *See Harte-Hanks*, 491 U.S. at 691 n.37 ("the press need not accept 'denials, however vehement; such denials are so commonplace in the world of polemical charge and countercharge that, in themselves, they hardly alert the conscientious reporter to the likelihood of error'" (citation omitted))

- Ogebe's allegations for Statement 22 – the quote from one student stating that the students were encouraged by Ogebe and his associates to embellish their stories – are similarly contradictory. In the original Complaint, Ogebe alleged that Hinshaw and Parkinson did not ask him about this statement. Compl. at 19. In the Amended Complaint, Ogebe alleges that Hinshaw and Parkinson "had asked this question in an interview" and "mentioned the Gadzamas, a local Nigerian couple whom they [sic] girls stayed with prior." Am. Compl. at 17. But, Ogebe does not deny that the students made this claim nor offer any explanation for how WSJ would know it was false, as would be required to establish actual malice.

*Second*, many of Ogebe's new allegations simply are not evidence of actual malice. For instance:

11

- For Statement 1 – the students' statement that Ogebe "told them they could be shipped back [to Nigeria] – and harmed – if they didn't do what he said" – his theory of actual malice is that "Defendants clearly knew that the girls who arrived in 2014 had 2-year student visas" and "were not US permanent residents." Am. Compl. at 9. That allegation, however, is a *non sequitur*. Whether the students were permanent residents or had temporary visas does not establish whether Ogebe made the threat in question, let alone that WSJ knew he did not make that threat.

- For Statement 14 – that Ogebe had two students tell their stories to "a conference room full of journalists" in New York City – Ogebe claims Defendants published with actual malice "because they themselves were not there being Manhattan-based journalists and there are no journalists [sic] reports anywhere from the said 'roomful of journalists.'" Am. Compl. at 15.[9] This is another *non sequitur*. It defies common sense to believe that a Wall Street Journal reporter would attend every news event in New York City. And, the purported lack of press coverage from other news media is not proof that this news conference did not occur, let alone that Defendants knew the conference did not occur.

- For Statement 23 – reporting that Ogebe was "emotional" and screamed at the students that "You are wicked, wicked girls" and "Do you want to see me go to jail?" – Ogebe alleges that he offered to provide a recording of the incident to WSJ, but it "refused." Am. Compl. at 17-18. But, he does not deny being emotional or telling the students they were "wicked" in the midst of the "DHS school invasion." *Id.* Indeed, he pleaded in his original Complaint that during this incident he did say "the girls were wicked for trying to get him and

---

[9] As the Amended Complaint shows, Ogebe knows that Parkinson, Hinshaw and Akingbule are based outside the United States and thus are not "Manhattan-based journalists." Am. Compl. ¶¶ 4-5.

12

their American host family into prison by calling the Sex-Trafficking squad on them." Compl. at Ct. 1 ¶ 3(q). And, as the Court explained to Ogebe at the hearing, "the fact that [Defendants] didn't choose to ask you for your documentation is not actionable." Tr. 22:16-17.

- For Statement 34 – discussing a video distributed to the media in which a student "stated that '[a]ll the things that have been said about our Uncle Emmanuel are true'" – Ogebe claims that Defendants acted with actual malice because Defendants knew "[s]ome of the girls refused to sign the spurious allegations because they knew it was false." Am. Compl. at 24-25. But, what some students knew or believed has no bearing on what Defendants knew. And, even if the Defendants knew that "some of the girls" claimed the allegations about Ogebe were untrue, it is uncontested that other students (including the one that recorded the video) leveled accusations against Ogebe. Indeed, he even admits that five students "join[ed] in the attacks and accusations" against him. *Id.* at 25.

***Finally***, Ogebe alleges for the first time that he recorded WSJ's interview with him and that during the interview Drew Hinshaw admitted the students were liars. Am. Compl. ¶¶ 21-22. This allegation is entirely false, as shown by one of the recordings Ogebe submitted with his amended complaint. In fact, those recordings establish that Ogebe's prior pleadings about the Defendants' contact with him also were false.

Most notably, Ogebe previously alleged that there was a "solitary phone interview," *e.g.*, Dkt 1 at 13-20, and that Defendants "afforded Plaintiff the proverbial 'one call' during dinner on the eve of publication" so as "to maximize their last minute 'gotcha' gutter journalism," Opp. to MTD Dkt. 68 at 14. But, the recordings show that Defendants interviewed Ogebe at least twice. The first recording submitted by Ogebe, which is only a portion of one interview, lasts over 52 minutes and ends with the reporter noting that the interview lasted ***two hours***. Ogebe Exhibit

13

Part I[10] at 50:29-41.  The other recording is of a follow-up interview.  Ogebe again provided only a partial recording of that interview, and the recording lasts over 18 minutes.  *See generally* Ogebe Exhibit Part II.  Despite submitting these recordings to the Court, and the Court's admonition to comply with Rule 11 and make allegations in good faith, *see* Tr. 21:22 – 22:1; Dkt. 82 at 1, Ogebe continues to allege – falsely – in his amended complaint that "Defendants only afforded Plaintiff the proverbial 'one call.'"  Am. Compl. ¶ 20.

Ogebe's falsehoods do not end there: With respect to the specific allegation in the amended complaint about how the interview supposedly establishes actual malice, Ogebe alleges that he told WSJ reporter Drew Hinshaw that one student's "minder" caused her to falsely tell the United Nations Security Council that Congresswoman Frederica Wilson – not Ogebe – had brought her to the United States.  Am. Compl. ¶ 21.  Ogebe asserts that he then said, "I don't know how much longer they can keep up all of this lying," and that Hinshaw responded, "Yeah.  Okay!  I was wondering the same thing. I was wondering the same thing."  *Id.*

But, the recording of this interview shows that is *not* what Hinshaw said.  Rather, Hinshaw replied, "Yeah.  Okay.  There's one other strange thing – there's one other strange thing . . ." and then asked Ogebe about a claim that some of the parents of the students had planned to protest in Nigeria's capital, Abuja, when some of the students did not return to Nigeria for their summer vacation.  Ogebe Exhibit Part I at 47:02-48:19.

---

[10] Ogebe filed with the court a compact disc labeled "Exhibit A1 AMEN," Dkt. 95, but did not serve that disc on Defendants.  After receiving electronic notice of this filing from the Court, Defendants requested that Ogebe comply with his obligation to serve Defendants with a copy of that exhibit.  In response, Plaintiff provided via Dropbox two audio files: a 52-minute file labeled WallStreet Journal 12_4_18.wav ("Ogebe Exhibit Part I") and an 18-minute file labeled WallStreet Journal PT2_ 12_4_18.wav ("Ogebe Exhibit Part II").  Defendants will provide the Court with copies if these files do not match the ones Ogebe filed with the Court.

Even setting aside the obvious falsehood of Ogebe's allegation, even if it were true, the allegation would not assist Ogebe in plausibly pleading the Article was published with actual malice. Hinshaw's alleged comment could only refer to the credibility of the students, who are the sources for just eight of the 37 challenged statements (Nos. 1, 7, 14, 15, 18, 22, 34 and 36). Thus, it is irrelevant to the remaining 29 challenged statements.

Further, the fabricated comment would not indicate Hinshaw knew or strongly suspected anything reported in the Article was false. Ogebe alleges Hinshaw expressed agreement with Ogebe's assertion that one student's "minder" caused her to falsely tell the United Nations Security Council that Congresswoman Frederica Wilson – not Ogebe – had brought her to the United States. Am. Compl. ¶ 21. At most, this would have been an acknowledgement by Hinshaw that one student had publicly lied to the U.N. at the behest of her "minder" about who brought her to this country. The student in question is not Kauna Bitrus, the young woman the Article quotes by name, and the statement regarding Rep. Wilson is not among any of the challenged portions of the Article – indeed, that claim is not mentioned in the Article at all. And, as Defendants noted in their earlier briefing, a journalist's knowledge that a source has lied in the past does not amount to reckless disregard for the truth absent clear reasons to doubt the veracity of the source's specific statements. *See* Dkt. 18 at 31-32.

Moreover, Ogebe's false allegation about the interview is not materially different from his allegation in the original Complaint that Defendants knew one of the students had lied to the United Nations, purportedly at the behest of Ogebe's nemesis Doug Wead (her "minder"), an allegation the Court already found insufficient to plausibly suggest actual malice. *See* Compl. ¶ 74; *see also* Dkt. 68 at 35 (same assertion in Plaintiff's response to first Motion to Dismiss). Because Ogebe does not and could not connect this allegation to any challenged statement or

15

show Hinshaw had specific knowledge the students lied *to him*, it would not support any claim of actual malice even if it were true.

Ogebe's Amended Complaint should be dismissed with prejudice for the additional and independent reason that he has not pleaded facts that plausibly suggest the Article was published with actual malice.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court enter an order dismissing Ogebe's amended complaint in its entirety with prejudice and providing any additional relief the Court deems to be just and proper.

Dated:  February 24, 2020　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　 */s/ Matthew E. Kelley*
　　　　　　　　　　　　　　　　　　　　Matthew E. Kelley, Va. Bar No. 84045
　　　　　　　　　　　　　　　　　　　　Michael D. Sullivan (admitted *pro hac vice*)
　　　　　　　　　　　　　　　　　　　　Ballard Spahr LLP
　　　　　　　　　　　　　　　　　　　　1909 K Street NW, 12th Floor
　　　　　　　　　　　　　　　　　　　　Washington, DC 20006
　　　　　　　　　　　　　　　　　　　　T:  (202) 508-1112
　　　　　　　　　　　　　　　　　　　　F:  (202) 661-2299
　　　　　　　　　　　　　　　　　　　　kelleym@ballardspahr.com
　　　　　　　　　　　　　　　　　　　　sullivanm@ballardspahr.com

　　　　　　　　　　　　　　　　　　　　Michael Berry (admitted *pro hac vice*)
　　　　　　　　　　　　　　　　　　　　Ballard Spahr LLP
　　　　　　　　　　　　　　　　　　　　1735 Market Street, 51st Floor
　　　　　　　　　　　　　　　　　　　　Philadelphia, PA 19103
　　　　　　　　　　　　　　　　　　　　T:  (215) 665-8500
　　　　　　　　　　　　　　　　　　　　F:  (215) 864-8999
　　　　　　　　　　　　　　　　　　　　berrym@ballardspahr.com

　　　　　　　　　　　　　　　　　　　　*Counsel for Defendants*
　　　　　　　　　　　　　　　　　　　　*Dow Jones & Company, Inc.,*
　　　　　　　　　　　　　　　　　　　　*Drew Hinshaw, and Joe Parkinson*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 24th day of February, 2020, I caused a copy of the foregoing to be filed electronically with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing to all interested parties.

        /s/ Matthew E. Kelley
Matthew E. Kelley
Ballard Spahr LLP
1909 K Street NW, 12th Floor
Washington, DC 20006
T: (202) 508-1112
F: (202) 661-2299
kelleym@ballardspahr.com

*Counsel for Defendants
Dow Jones & Company, Inc.,
Drew Hinshaw, and Joe Parkinson*